And our final case for this morning, still morning, is United States v. Derrick Phillips. Mr. Chandra. May it please the Court, my name is Michael Chandra. I am counsel to Mr. Derrick Phillips in the appeal of the denial of a suppression hearing in his revocation of supervised release. Mr. Phillips is asking the Court for remand for a suppression hearing. He made an offer of proof in his final revocation hearing about a bad stop. But the Court had ruled earlier that under Pennsylvania Board of Probation and Parole v. Scott that there was no right to that. So that's what you need to explain to us, why this doesn't fall comfortably under Scott. This is a revocation of supervised release, not parole. But there's a great deal, not just that these two statuses have in common, but if you look at the rationale the Supreme Court set forth in Scott, they say very clearly, you know, the exclusionary rule is a remedy. It's something we don't like extending to new situations. Here are a bunch of examples of new situations we haven't extended it to. And with both that philosophy in mind and the particulars, how could we possibly rule in Mr. Phillips' favor without being instantly per curiam reversed by the Supreme Court on the basis of Scott? Yes, Judge Woods. The argument we're making is preservation for certs. That we realize that there is a substantial amount of case law within the circuit, within other circuits, and we cite that. And none else. No one has ruled your way, right? In 1984, Edgar Stafford said that it was an open question. In 1998, counsel Scott comes across and says that at least for parole, that's not the case. And subsequently there have been, I think, four circuit courts that have said that it doesn't, that there is no exclusionary rule under Fourth Amendment for supervised release revocations. So the argument that we're making is that Gagnon and Morrissey, that there has been the assumption that these two should be applied to revocations of supervised release. But the question I was asked in Gagnon was, should we extend Morrissey to probation? Well, are there relevant differences? The courts in that case, there weren't relevant differences. Our argument is that if you look at Gagnon and you look at Morrissey closely, that there are substantial differences between what is happening in revocation, probation, or parole in the current regime of supervised release revocations. So is the logic of your argument, it seemed, I'll put this in a more affirmative way, it strikes me that the logic of your argument would also require a change in the rule about the availability of exclusion at sentencing. Because, of course, a revocation of supervised release is just changing the original sentence for the underlying crime. And if we're going to have an exclusionary rule at sentencing and not at supervised release, that would be a little nutty. So are you going to argue that it needs to be everywhere? For the purposes of this case, that's not certainly what's before us. You are correct that there could be follow-ons of this. Of course, certainly defense counsel, if they received a ruling from the Supreme Court granting the exclusionary rule, would definitely want to run with it. The arguments that we've raised in terms of the differences are that, looking at the Scott opinion, Scott opinion five times talks about the flexible, non-adversarial, administrative nature of a parole revocation. And the argument is that that is just not the case with the current regime of revocation of supervised release. But, you know, I'm not even sure that's true. Because if you step back a step, there are all these conditions on supervised release, some of which are imposed at the time of the original sentence. But over and over, we see that people can come back to the court, they can modify the conditions, maybe have some of the more onerous conditions lifted. If the person has earned it, maybe a court might decide that additional conditions are necessary. So there's a great deal of administrative flexibility in supervised release. Yes, Your Honor. There are those aspects of it. But there are also substantial amounts that are adversarial and that are punitive, and particularly in the revocation context. So in terms of the adversarial nature of it, there is, unlike the process that was described in Gagnon and Morrissey, there is a prosecutor that's involved. There is a defense counsel. The types of punishments available are substantial. The current revocation of supervised release resembles in many ways a bench trial with a punishment of a class E felony. And so I think that those are things that make it a lot different than what the court was considering in Gagnon, as well as in Morrissey. And so in Scott, Scott talks about Gagnon and Morrissey. Particularly about Gagnon, he describes four different ways in which parole and probation are the same, and why it's adversarial and administrative. One is conditional liberty, that it's administrative because of the large volume, that the federal rules of evidence don't apply, and that it's not adversarial. It's more predictive and discretionary. I've addressed at least our arguments as to why it is adversarial. In terms of whether the federal rules of evidence apply, what we're asking for is that it wouldn't change that. So in a normal suppression hearing, the federal rules of evidence also don't apply. They can take hearsay evidence, and so we're not asking for a change there. In terms of conditional liberty, that itself, while that was one reason to apply the law there, it wasn't taken, certainly in Scott, as that was in and of itself sufficient for extending Gagnon and Morrissey to the revocation that was in consideration in Scott. I would like to turn to one other issue, which was a second issue, which was about the policy issues that were considered in Scott. Particularly the calculus of deterrence versus flex, in terms of deterrence versus the benefits that are obtained by denying exclusionary rule. It's important to recognize that because of the type of proceeding that a final revocation hearing is, that police have a much better chance of being deterred in terms of whether or not they made a good stop. In an administrative proceeding, in fact, the police officer may not appear. They may just submit a report that's submitted to the administrative board, and they make a decision based on that. In this case, certainly the record in front of you is of a police officer who was cross-examined about whether the stop was good or not. If this exclusionary rule had been applied at that point, the police officer would have had an immediate type of response as to whether or not this is a good practice for going forward. Whether they should be making stops on this basis, or they should be changing the way they approach their investigations. That's certainly not what was happening in Scott, nor in Gagnon, nor in Morrissey. I would argue that it's not just marginal or minimal deterrence, but there is actually quite a bit of deterrence available if the police officers get immediate responses as to whether or not they should be doing those stops or searches. In terms of whether this would hinder supervised release going forward, it's important to recognize that this is a grade A violation. In most cases, the only time you would see a motion to suppress it would be in the case of whether there's a grade A or B violation on grade C. As Mr. Phillips summarized in the opening brief, there are statistics that the courts have provided. About 70% of the proceedings that have revocations are for grade C technical violations. There would still be quite a bit of violations that would not be disturbed by exclusionary rule. I'd like to reserve the rest of my time. Thank you. Thank you. Mr. Walters. Good morning, and may it please the court. Taking my cue from my friend's statement that they're preserving this issue for cert petition, I think my time would be best used to see if this court has any questions. I see none. And if not, then we would ask that you affirm the judgment of the district court. Thank you. All right. Thank you, Mr. Walters. So that's not much to rebut, Mr. Jones. All right. Well, we thank you. We thank both counsel. We'll take the case under advisement, and the court will be in recess.